**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| RANDY and LISA PUGH, | ) |
| | ) |
| | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )     No. 13-2020 |
| | ) |
| Bank of America, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants U.S. Bank, Bank of America, and ReconTrust Company's January 16, 2013 Motion to Dismiss for Failure to State a Claim. (Motion, ECF No. 6; Defs.' Mem., ECF No. 6-1.) Plaintiffs Randy and Lisa Pugh (collectively "Plaintiffs") responded on February 15, 2013. (Pls.' Resp. in Opp. to Defs.' Mot., ECF No. 8) ("Pls.' Resp.") Defendants replied on March 5, 2013. (Defs.' Rep., ECF No. 13.) Plaintiffs bring suit for violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101, et seq.; breach of contract properly characterized as breach of the covenant of good faith and fair dealing; promissory estoppel; intentional or fraudulent misrepresentation; violations of the

Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and 12 C.F.R. § 226.39; and violation of Tennessee law governing foreclosure. For the following reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## I. Background[1]

Plaintiffs seek injunctive relief and damages based on a Promissory Note (the "Note"), Deed of Trust (the "Deed of Trust"), and a series of mortgage transactions affecting the real property located at 867 McCalla Road, Millington, Tennessee (the "Property"). (Compl. ¶ 9, ECF No. 1-2.)

On or about May 31, 2002, Plaintiffs purchased the Property and executed the Note, Deed of Trust, and other documents to finance the purchase. (Id.) Plaintiffs' loan from Wells Fargo was a thirty-year adjustable rate mortgage ("ARM"), which was denominated a "2 Year/6 Month ARM." (Id. ¶ 10.) Under the Note, Plaintiffs were charged an interest rate of 10% for the first two years of the loan, after which the interest rate was subject to change. (Id. ¶ 11.) The Note contemplated an interest rate that could rise to 13% as of June 2004 and could increase by as much as 1% every six months thereafter. (Id. ¶ 12.) The interest rate could go no higher than 16% over the life of the loan, but would go no lower than 10%. (Id. ¶ 13.)

---

[1] The facts are those alleged in Plaintiffs' Complaint unless otherwise specified.

Shortly after purchasing the Property, Plaintiffs struggled to make monthly payments, which they attribute to an inflated purchase price and a high-cost loan. (Id. ¶ 18.) Plaintiffs allege that the loan includes settlement charges in excess of 8% of the loan amount and a penalty for refinancing within two years of the origination of the loan. (Id. ¶ 15.) In or about 2002, because of their struggles, Plaintiffs filed a Chapter 13 bankruptcy plan. (Id. ¶ 18.) They followed that plan for three to four years and refinanced their mortgage with Wells Fargo at a fixed rate of interest. (Id. ¶ 19.)

There was no formal closing of the refinance agreement. (Id. ¶ 20.) A representative of a mortgage broker visited Plaintiffs and obtained their signatures on new loan documents, but Plaintiffs allege they were never provided copies of the documents. (Id.) Even after refinancing, Plaintiffs struggled to make their refinanced monthly mortgage payments. (Id. ¶ 21.)

At some unknown time, Bank of America took over the servicing of Plaintiffs' mortgage. (Id. ¶ 23.) Bank of America participates in the Home Affordable Mortgage Program ("HAMP"), which is administered by the United States Department of the Treasury and is designed to reduce mortgage payments and provide other relief to mortgage borrowers who are at risk of foreclosure. (Id. ¶ 25.) Mortgage payments for eligible HAMP

borrowers are reduced to 31% of their monthly income through a loan modification. (<u>Id.</u> ¶ 27.)

Having heard about HAMP, Plaintiffs attempted to negotiate a loan modification with Bank of America. (<u>Id.</u> ¶ 28.) Plaintiffs employed counsel to assist in their negotiations. (<u>Id.</u> ¶ 29.) Soon after the loan modification process began, Plaintiffs were told to stop making mortgage payments. (<u>Id.</u> ¶ 31.) Although they were current on their payments through July 2011, Plaintiffs stopped making payments on the instructions of an unidentified Bank of America representative. (<u>Id.</u> ¶ 32.)

Plaintiffs were in the loan modification process throughout 2011. (<u>Id.</u> ¶ 34.) They submitted extensive paperwork and were assured that they would receive a loan modification. (<u>Id.</u> ¶ 35.) One demand for payments was made during the modification process: in August 2011 Plaintiffs received correspondence about a missed July payment. (<u>Id.</u> ¶ 36.) Bank of America never offered Plaintiffs a mortgage reduction under HAMP. (<u>Id.</u> ¶ 37.)

Plaintiffs allege that, although they were eligible for relief under HAMP and provided all the necessary documentation, they did not receive a mortgage reduction. (<u>Id.</u> ¶¶ 38-40.) Regular communication with their counsel was unhelpful; they were advised on multiple occasions to resend documentation they had previously submitted. (<u>Id.</u> ¶ 41.) Plaintiffs were unable

to get a definitive answer about their loan modification request from their counsel. (Id. ¶¶ 40.)

On May 18, 2012, an agent of Bank of America sent Plaintiffs a letter stating that "[u]nfortunately, your home loan is not eligible for modification assistance." (Id.); (see also Ex. A, ECF No. 1-2) ("We are unable to offer you a modification because your current monthly housing expense . . . [is] considered to be affordable under this program."). After receiving that letter, Plaintiffs allege that Defendants engaged in a "very confusing series of correspondence." (Compl. ¶ 49.) A September 6, 2012 letter from a Customer Relations Manager for Bank of America advised Plaintiffs that the Property "has been referred to foreclosure." (Id. ¶ 50.) A letter dated September 13, 2012, from the same Customer Relations Manager, represented that Bank of America had "several programs designed to help homeowners who are having trouble making their monthly mortgage payment, and it's possible that one could help you." (Id. ¶ 51) (see also Ex. B, ECF No. 1-2.) A third letter, also dated September 13, 2012, stated that, "[e]ven though your home is now in foreclosure, it's not too late to get help." (Compl. ¶ 52.)

On September 14, 2012, Plaintiffs received a letter from ReconTrust Company entitled "Notice of Acceleration and Foreclosure." (Id. ¶ 53) (see also Ex. C, ECF No. 1-2.) The letter stated that ReconTrust had been appointed trustee by U.S.

Bank to begin foreclosure proceedings. (Compl. ¶ 53.) The letter identified U.S. Bank as "the creditor to whom the above-referenced debt is owed." (Id.) Plaintiffs never received notice that U.S. Bank acted as trustee for a mortgage-backed security pool that owned the Note. (Id.)

Also on September 14, 2012, Plaintiffs received a document entitled "Important Legal Notice." (Id. ¶ 55.) The Important Legal Notice stated: "name of the Creditor to whom the debt is owed: Bank of America." (Id.) A Notice of the Right to Foreclose, received by Plaintiffs on September 14, 2012, described Bank of America as the loan servicer/lender. (Id. ¶ 56.)

On September 28, 2012, Plaintiffs received an unsigned letter stating that "[w]e have not received your past due payments, so we have referred your home loan to our Foreclosure Review Committee for review." (Id. ¶ 57) (see also Ex. E, ECF No. 1-2.) The letter continued, "[t]his does not necessarily mean you will lose your home to foreclosure. We want to work with you and are here to help." (Compl. ¶ 58.)

On an unknown date, Plaintiffs received an undated "NOTICE OF SUBSTITUTE TRUSTEE'S SALE," which stated that the "beneficial interest of said Deed of Trust was last transferred to U.S. Bank, . . . who is now the owner of said debt. . . ." (Id. ¶ 59.) The Notice stated that "said Substitute Trustee will, on

December 5, 2012, 10:00 A.M. at the Shelby County, where the foreclosure sales are customarily held at the Comfort Inn Downtown, 100 N. Front Street, Memphis, TN 38103 proceed to sell at public outcry to the highest and best bidder for cash, . . . [the Property] situated in Shelby County, Tennessee. . . ." (Id. ¶ 60.)

Plaintiffs allege that, because of Defendants' actions, they have suffered and are threatened with future substantial financial injury and emotional trauma. (Id. ¶ 61.)

## II. Jurisdiction and Choice of Law

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' Complaint raises a federal question under the TILA and 12 C.F.R. § 226.39. The Court has supplemental jurisdiction over Plaintiffs' state-law claims because they derive from the same "common nucleus of operative fact" as Plaintiffs' federal claims. See 28 U.S.C. § 1367(c); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F. 3d 733, 741 (6th Cir. 1999) (citing Menuskin v. Williams, 145 F.3d 755, 761 (6th Cir. 1998)).

7

For contract claims, Tennessee follows the rule of lex loci contractus, which provides that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." Vantage Tech., LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)); see also Southeast Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 672 n.8 (6th Cir. 2006) (observing that "Tennessee adheres to the rule of lex loci contractus."). "If the parties manifest an intent to instead apply the laws of another jurisdiction, then that intent will be honored provided certain requirements are met": (1) the choice of law provision must be executed in good faith, (2) the chosen jurisdiction must bear a material connection to the transaction, (3) the basis for the choice of law must be reasonable, and (4) the choice of "another jurisdiction's law must not be 'contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern.'" Vantage Tech. 17 S.W.3d at 650 (citations omitted).

The Note and Deed of Trust were executed in Tennessee. The Deed of Trust states that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." (Deed of Trust ¶ 16.) The Property is located in Tennessee. The parties do not manifest an intent to apply the

law of another jurisdiction.  Tennessee substantive law governs Plaintiffs' contract claims.

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hicks v. Lewis, 148 S.W.3d 80, 86 (Tenn. Ct. App. 2003) (quoting Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992)).  The injuries alleged in this case occurred in Tennessee, Plaintiffs are citizens of Tennessee, and Defendants do not contend that another state's law should apply.  Tennessee substantive law governs Plaintiffs' tort claims.

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).  "[A] formulaic recitation of the

elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>per curiam</u>). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." <u>Id.</u> at 1950.

## IV. Analysis

Defendants argue that Plaintiffs: (1) have no private right of action under HAMP; (2) do not have standing to bring a claim under the National Mortgage Settlement; (3) have raised claims

10

that fail as a matter of law; and (4) are not entitled to injunctive relief.

## A. Plaintiffs Have Not Brought A Claim Under HAMP

Plaintiffs allege that they were entitled to a modification under HAMP. Defendants argue that Tennessee law forecloses a private right of action under HAMP and that Plaintiffs' claim, to the extent it raises a violation of HAMP, should be dismissed.

Plaintiffs do not bring a claim under HAMP. Plaintiffs provide background on HAMP insofar as Bank of America participates in that program, and Plaintiffs allege they should have been offered a mortgage reduction under HAMP. (Compl. ¶¶ 24-33.) Any and all allegations relevant to HAMP are background for Plaintiffs' other claims; HAMP is not the vehicle for their requested relief. Providing background and alleging entitlement do not constitute bringing a cause of action under HAMP.

## B. Plaintiffs Have Not Brought A Claim Under the National Mortgage Settlement

Defendants argue that Plaintiffs lack standing to bring a claim under the National Mortgage Settlement. The National Mortgage Settlement is a consent judgment executed by the United States Department of Justice, the United States Department of Housing and Urban Development, and forty-eight Attorneys

General, including the Attorney General of the State of Tennessee. (Compl. ¶ 42.)

To support their claim under the TCPA, Plaintiffs assert that Defendants failed to fulfill their responsibilities under the Mortgage Settlement. Reading the Complaint as a whole demonstrates that information about the Mortgage Settlement is alleged as background, not an independent basis for relief. Plaintiffs have not asserted a direct claim for violation of the National Mortgage Settlement.

### C. TCPA

The TCPA provides a private right of action for a person who suffers financial loss as a result of another's "unfair or deceptive act or practice." Tenn. Code Ann. § 47-18-109. To establish a prima facie case, the plaintiff must allege facts showing that the "defendant engaged in an act or practice that is unfair or deceptive as defined under the [TCPA], and that [the] plaintiff suffered a loss of money, property, or a thing of value as a result of the unfair or deceptive act of [the] defendant." Rhodes v. Bombardier Capital Inc., No. 3:09-CV-562, 2010 U.S. Dist. LEXIS 101176, at *5-6 (E.D. Tenn. Sept. 24, 2010) (citing Tenn. Code Ann. § 47-18-109).

The TCPA does not define the terms "unfair" or "deceptive," but it provides a non-exclusive list of acts and practices that are per se unfair or deceptive. See Tenn. Code Ann. § 47-18-

104(b). Courts must determine whether acts or practices not on the list are unfair or deceptive on a case-by-case basis. <u>See Wolfe v. MBNA Am. Bank</u>, 485 F. Supp. 2d 874, 890 (W.D. Tenn. 2007) (citing <u>Ganzevoort v. Russell</u>, 949 S.W.2d 293, 300 (Tenn. 1997)). "[T]he Tennessee Supreme Court has recognized that a deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer." <u>Cloud Nine, LLC v. Whaley</u>, 650 F. Supp. 2d 789, 797 (E.D. Tenn. 2009) (citing <u>Ganzevoort</u>, 949 S.W.2d at 299). An act or practice is unfair only if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." <u>Ward Adventures, LLC v. Buddy Gregg Motor Homes, Inc.</u>, No. 3:05-CV-236, 2007 U.S. Dist. LEXIS 19890, at *12 (E.D. Tenn. Mar. 20, 2007) (quoting <u>Tucker v. Sierra Builders</u>, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)).

Plaintiffs allege that Bank of America's acts, policies, and practices are unfair or deceptive within the meaning of the TCPA. (Compl. ¶ 63.) Among the acts, policies, and practices Plaintiffs identify are: (1) delaying and failing to provide notification of Plaintiffs' loan modification status; (2) routinely demanding documents Plaintiffs had already submitted; (3) failing to offer Plaintiffs a HAMP loan modification; (4)

13

failing to offer Plaintiffs a "superseding loss mitigation alternative" after they had been denied a HAMP modification; (5) instructing Plaintiffs to refrain from making mortgage payments throughout the loan modification process and then using Plaintiffs' default as a basis for proceeding with foreclosure; (6) failing to have adequate internal procedures in place, or to supervise employees, to provide Plaintiffs with accurate and consistent information about the status of their loan; and (7) proceeding with foreclosure while Plaintiffs' loan modification request was pending. (Id. ¶ 64.) Plaintiffs also allege that Bank of America "engaged in unfair acts by failing to advise [] Plaintiffs of their potential eligibility for relief through its Consent Judgment with the Justice Department and other public officials and giving them fair consideration for relief under that agreement." (Id. ¶ 65.) Plaintiffs allege that all of Bank of America's unfair or deceptive acts were willful, knowing, and concealed with the effect of discouraging Plaintiffs from seeking redress through the courts. (Id. ¶¶ 66-68.)

Defendants argue that: (1) the TCPA does not apply to foreclosure disputes; (2) the TCPA does not apply to the credit terms of a transaction; (3) Plaintiffs have not pled their TCPA claim with particularity; and (4) Plaintiffs fail to plead that

they lost money or property as a result of a violation of the TCPA.

Plaintiffs respond that: (1) the TCPA applies to foreclosure proceedings or that, alternatively, the facts constituting their TCPA claim arose before foreclosure; (2) the TCPA does not apply to credit terms of a transaction; (3) their TCPA claim is well pled; and (4) they have pled lost money or property as a result of a TCPA violation.

## 1. The TCPA Does Not Apply to Foreclosure Disputes

Under the TCPA, "the unfair or deceptive acts must affect trade or commerce, as defined by the Act." Davenport v. Bates, M2005-02052-COA-R3CV, 2006 Tenn. App. LEXIS 790, at *54 (Tenn. Ct. App. Dec. 12, 2006). In Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 841-42 (Tenn. 1996), the Tennessee Supreme Court held that a lender's repossession of collateral securing a defaulted loan is not actionable under the TCPA. The plaintiff in Pursell borrowed money from First American to purchase a pickup truck, which he pledged as collateral for the loan. Id. at 839. When the plaintiff became delinquent on his payments, the bank repossessed the truck, sold it at auction for $3,000 more than what was owed, and retained the proceeds as "collection expenses." Id. at 839-40. The plaintiff brought suit against the bank and the repossession company alleging several causes of action, including one under the TCPA. Id. at

840. The trial court dismissed the TCPA claim, and the Supreme Court affirmed on the basis that collateral repossession and disposition practices are not within the definition of "trade or commerce" in the TCPA. Id. at 840-42. The Pursell court held that, "[t]hough the definitions of 'trade or commerce' contained within the [TCPA] are broad, they [do] not extend to this dispute, which arose over repossession of the collateral securing the loan." Id. at 842.

Since Pursell, courts have consistently held that a lender's actions for foreclosure and debt-collection, even when pursuing loan modification, are not covered under the TCPA. See Knowles v. Chase Home Fin., LLC, No. 1:11-cv-1051, 2012 U.S. Dist. LEXIS 166748, at *23-24 (W.D. Tenn. Aug. 2, 2012); Peoples v. Bank of Am., No. 11-2863-STA, 2012 U.S. Dist. LEXIS 22208, at *9 (W.D. Tenn. Feb. 22, 2012) (holding that lender's negotiation of a mortgage modification while simultaneously pursuing foreclosure was not actionable under the TCPA); Vaughter v. BAC Home Loans Servicing, LP, No. 3:11-cv-00776, 2012 U.S. Dist. LEXIS 6066, at *5-6 (M.D. Tenn. Jan. 19, 2012) (deciding that TCPA did not apply to defendant's allegedly deceptive acts during loan modification negotiations and home foreclosure); Hunter v. Washington Mut. Bank, No. 2:08-CV-069, 2008 U.S. Dist. LEXIS 71587, at *5-6 (E.D. Tenn. Sept. 10, 2008) (dismissing

TCPA claim based on bank's attempts to collect from delinquent borrower).

The Complaint makes clear that this dispute arises from and addresses a mortgage transaction. (Compl. ¶¶ 19-20, 31-32, 50, 58, 60-61.) The gravamen of Plaintiffs' allegations is that foreclosing on the Property would be improper because of representations made during a series of events that led to the denial of Plaintiffs' request for a loan modification. Those events occurred in the context of a dispute that is effectively a "dispute over repossession of the collateral securing [a] loan." Pursell, 937 S.W.2d at 842. "[W]hen a debtor defaults on a mortgage payment, and the mortgage holder forecloses upon the collateral that secured the loan (in this case, the Property), the TCPA does not apply." Launius v. Wells Fargo Bank, N.A., No. 3:09-CV-501, 2010 U.S. Dist. LEXIS 89234, at *5-6 (E.D. Tenn. Aug. 27, 2010).

Plaintiffs argue that the courts have misinterpreted Pursell by neglecting crucial language: "[t]his holding is confined to the facts and circumstances of this case, and we do not, by this Opinion, generally exempt banking activities from the Tennessee Consumer Protection Act." Pursell, 937 S.W.2d at 841-42. Although some district courts have acknowledged that limiting principle, see, e.g., Laporte v. Wells Fargo Bank, N.A., No. 3:08-cv-376, 2009 U.S. Dist. LEXIS 59849, at *3 n.4

(W.D. Tenn. July 14, 2009), it has not affected their conclusion that the TCPA does not apply to foreclosures. A fair reading of the limitation is that the TCPA applies to routine consumer banking transactions, such as checking, savings, and credit card activities. The TCPA does not apply to foreclosure proceedings.

Plaintiffs argue that an exception permits foreclosure-related claims under the TCPA when a plaintiff relies on a defendant's promise of a permanent loan modification. See Fifth Third Bank v. Steve Hulen Const., LLC, No. 3:11-0035, 2011 U.S. Dist. LEXIS 63113 (M.D. Tenn. June 14, 2011). In Steve Hulen Const., the plaintiffs worked with a Fifth Third Bank representative to extend a loan and reduce the interest rate. Id. at *2. Fifth Third Bank's loan extension offers were conditioned on significantly increased interest rates, on a "take it or leave it" basis, and there were no discussions about converting existing loans. Id. To extend Plaintiffs' loans, Fifth Third Bank required them to accept significant increases in principal payments and interest rates and to cross-collateralize their existing obligations. Id. The court declined to dismiss the plaintiffs' TCPA claim, reasoning that the parties tied "the viability of the [TCPA] claim to the court's ruling on the promissory fraud claim." Id. at *5 n.5. Because the plaintiffs' promissory fraud claim was well pled,

their TCPA claim survived the motion to dismiss. The plaintiffs' TCPA claim was not addressed on the merits.

The parties here have not tied the viability of Plaintiffs' TCPA claim "to the court's ruling on the promissory fraud claim." Id. Plaintiffs have pled a violation of the TCPA as an independent basis for relief. Even if the TCPA claim were tied to a promissory fraud claim, the weight of authority prohibits a claim for wrongful foreclosure under the TCPA. "The actions of a bank in repossessing and disposing of its collateral do not constitute violations of the Tennessee Consumer Protection Act, even if the bank acted wrongfully in repossessing the collateral." See Schmidt v. Nat'l City Corp., No. 3:06-CV-209, 2008 U.S. Dist. LEXIS 102371, at *23 (E.D. Tenn. Dec. 17, 2008) (granting summary judgment against the plaintiffs).

Plaintiffs also rely on Humphreys v. Bank of America, No. 11-2514-STA, 2012 U.S. Dist. LEXIS 40954, at *42 (W.D. Tenn. Mar. 26, 2012). Plaintiffs argue that, because Bank of America violated the TCPA long before Defendants' actions in foreclosure, Plaintiffs' claim is not foreclosed as a matter of law. Humphreys did not address whether the TCPA covers foreclosure activities. It considered whether the plaintiff's proposed amendment to the complaint was time-barred. Id. at *45. Humphreys does not stand for the proposition that a

defendant's actions before foreclosure are distinguishable from a defendant's actions during foreclosure.

## 2. The TCPA Does Not Apply to Credit Terms of a Transaction

The TCPA does not apply to claims based on the "[c]redit terms of a transaction . . . except insofar as the Tennessee Equal Consumer Credit Act of 1974, . . . may be applicable." Tenn. Code Ann. § 47-18-111(a)(3). The basis for Plaintiffs' TCPA claim is Defendants' loan modification activities. (Compl. ¶¶ 64-66.) The Note and the Deed of Trust establish the payment terms and the parties' obligations.[2] (See, e.g., Note 1) (borrower "will pay principal and interest by making a payment every month.") Defendants are under no obligation to offer loan modifications or reduced payments; the Note and the Deed of Trust are clear that Defendants may accelerate Plaintiffs' outstanding balance if Plaintiffs do not pay. (Deed of Trust 13) ("Lender at its option may require immediate payment in full

---

[2] Plaintiffs did not attach the Note or the Deed of Trust to the Complaint. Defendants attached both to their Motion. The Court "retains the discretion to consider or exclude [] extrinsic evidence presented with a Rule 12(b) motion." Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 11-2987-STA-tmp, 2012 U.S. Dist. LEXIS 48976, at *13 (W.D. Tenn. Apr. 6, 2012). When a complaint explicitly cites documents that are not attached, courts may consider those extrinsic materials if they are central to plaintiff's claims. See id.; see also Duferco Steel v. M/V Kalisti, 121 F.3d 321, 324 n.3 (7th Cir. 1997) ("Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion."). The documents are considered part of the pleadings "for all purposes." Fed. R. Civ. P. 10(c). In the context of a 12(b)(6) motion, "all purposes" means treating the facts contained in the exhibit as true. Jones v. City of Cincinnati, 521 F.3d 555, 561 (6th Cir. 2008). Because the Note and the Deed of Trust are central to Plaintiffs' claims, the Court may consider them in deciding Defendants' Motion.

of all sums secured by this Security Instrument without further demand and may invoke the power of sale.") Allegations arising from actions or statements about loan modifications are "related to the terms of . . . the extension of credit" because those actions would alter the parties' rights and obligations under the Note and the Deed of Trust. See Knowles, 2012 U.S. Dist. LEXIS 166748, at *25 ("Because Chase's loan modification offers [are] related to the terms of its extension of credit to Plaintiffs, they fall outside the ambit of the TCPA."). For this additional reason, the TCPA does not apply to Plaintiffs' claims.

### 3. Plaintiffs' TCPA Claim Is Not Well Pled

Plaintiffs' TCPA claim must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Metro. Prop. & Cas. Ins. Co. v. Bell, No. 04-5965, 2005 U.S. App. LEXIS 17825, at *15-16 (6th Cir. Aug. 17, 2005); Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 694 F. Supp. 2d 888, 900, 915 (W.D. Tenn. 2010) (applying Rule 9(b)'s particularity requirement and dismissing plaintiff's TCPA claims); cf. Harvey v. Ford Motor Credit Co., 8 S.W.3d 273, 275-276 (Tenn. Ct. App. 1999) (noting that Tennessee Rule of Civil Procedure 9.02's requirement that plaintiffs state any averment of fraud with particularity applies to TPCA claims). Rule 9(b) requires a plaintiff, in alleging fraud, to "state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiffs' TCPA claim, as alleged, does not show unfair or deceptive conduct. If Bank of America delayed or failed to provide notice of the denial of Plaintiffs' loan modification, routinely demanded documents Plaintiffs had already submitted, or failed to supervise its employees to ensure that accurate and consistent information was relayed, it acted negligently. Failing to provide a HAMP modification or a "superseding loss mitigation alternative," assuming arguendo Plaintiffs were entitled to them, is no more than negligence. Allegations that a party acted negligently do not satisfy the particularity requirement of Rule 9. See Bell, 2005 U.S. App. LEXIS 17825, at *16 ("But Bell has at most suggested in her pleadings and on appeal that Cantrell acted negligently in completing her application and that Metropolitan wrongly rejected her claim.").

Plaintiffs also allege that they were deceived by Bank of America's instructions "to refrain from making mortgage payments throughout the loan modification process and then using the default as a basis for proceeding with foreclosure." (Compl. ¶ 64.) Plaintiffs do not identify the Bank of America representative or the time, place, and manner of the alleged fraud. At most, this allegation is a general allegation. "To

satisfy [Rule 9] a complaint must set forth specific fraudulent or deceptive acts rather than general allegations." Agfa Photo United States Corp. v. Parham, No. 1:06-cv-216, 2007 U.S. Dist. LEXIS 40980, at *31-32 (E.D. Tenn. June 5, 2007) (citing Humphries v. West End Terrace, Inc., 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)). Plaintiffs' TCPA claim is DISMISSED.

### D. Breach of Contract

Defendants argue that Plaintiffs' breach of contract claim, which Defendants characterize as a claim for breach of the implied covenant of good faith and fair dealing, is not an independent basis for relief. Defendants argue that, if there is no claim for breach of contract, a good faith and fair dealing claim fails as a matter of law. Plaintiffs argue that, because there is an enforceable contract between the parties, they may raise a claim for breach of the implied covenant of good faith and fair dealing.

Count II of the Complaint is titled "Breach of Contract." After incorporating previous allegations and claims, Plaintiffs allege that Defendants, by "committing the acts complained of, . . . repeatedly breached the contractual agreement to service Plaintiff's loan in accordance with the covenant of good faith and fair dealing." (Compl. ¶ 70.)

Although styled a claim for "Breach of Contract," Count II is more readily understood as a claim based on the implied

23

covenant of good faith and fair dealing. The parties' briefs support that conclusion. The parties' dispute occurs within the framework of claims based on the implied covenant of good faith and fair dealing, not breach of contract.

Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing by: (1) delaying, and never providing, notification to Plaintiffs about Defendants' approval or denial of various loan modifications; (2) routinely demanding documents Plaintiffs had already submitted; (3) failing to offer Plaintiffs a HAMP loan modification; (4) failing to offer Plaintiffs a "superseding loss mitigation alternative" after they had been denied a HAMP loan modification; (5) instructing Plaintiffs to refrain from making mortgage payments throughout the loan modification process and then using the default as a basis for proceeding with foreclosure; (6) failing to have adequate internal procedures in place, or to supervise employees, to provide Plaintiffs with accurate and consistent information about their loan status; and (7) proceeding with foreclosure while Plaintiffs' loan modification request was pending. (Id. ¶ 71.)

"While every contract contains an implied covenant of good faith and fair dealing, there must be a contract to contain the covenant." Jones v. LeMoyne-Owen College, 308 S.W.3d 894, 908 (Tenn. Ct. App. 2009) (internal citations omitted); see also

24

Wiggins v. Kimberly-Clark Corp., No. 3:12-CV-115, 2012 U.S. Dist. LEXIS 147090, at *12 (E.D. Tenn. Oct. 12, 2012) ("No implied covenant of good faith and fair dealing can exist in the absence of a contract."). The implied covenant does not "create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." Goot v. Metro. Gov't of Nashville and Davidson County, No. M2003-02013-COA-R3-CV, 2005 Tenn. App. LEXIS 708, at *8 (Tenn. Ct. App. Nov. 9, 2005). Instead, the implied covenant "'may be an element or circumstance of . . . breaches of contracts.'" Weese v. Wyndham Vacation Resorts, No.: 3:07-CV-433, 2009 U.S. Dist. LEXIS 55328, at *14 (E.D. Tenn. June 30, 2009) (quoting Solomon v. First Am. Nat'l Bank of Nashville, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)).

Parties to a contract "owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." Weese, 2009 U.S. Dist. LEXIS 55328, at *13; see also Barnes & Robinson Co. v. Onesource Facility Servs., Inc., 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). Every contract carries with it the implied covenant of good faith and fair dealing. Goot, 2005 Tenn. App. LEXIS 708, at *22. Tennessee courts analyzing implied covenants consider two overarching policy goals: honoring the contracting parties' reasonable expectations and protecting "the rights of the parties to receive the

25

benefits of the agreement they entered into." Barnes & Robinson Co., 195 S.W.3d at 642 (citations omitted).

Courts considering implied covenants construe the contract in question. Id. at 643 (citation omitted). They evaluate "the language of the instrument and the intention of the parties, and impose a construction which is fair and reasonable." Id. (citation omitted).

Plaintiffs have not stated a claim. "[A] breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather 'may be an element or circumstance of . . . breaches of contracts.'" Golf Sci. Consultants, Inc. v. Cheng, No. 3:07-CV-152, 2009 U.S. Dist. LEXIS 37721, at *16 (E.D. Tenn. May 4, 2009) (quoting Solomon, 774 S.W.2d at 945). Thus, "absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing." Envoy Corp. v. Quintiles Transnat'l Corp., No. 3:03cv0539, 2007 U.S. Dist. LEXIS 54429, at *8 (M.D. Tenn. July 26, 2007). Because Plaintiffs do not otherwise allege breach of contract, their implied convenant claim must be DISMISSED. See Ike v. Quantum Servicing Corp., 11-02914, 2012 WL 3727132 (W.D. Tenn. Aug. 27, 2012) (dismissing plaintiffs' implied covenant claim because they did not allege breach of contract).

Even given a claim for breach of contract, Plaintiffs have not adequately pled a breach of the duty of good faith and fair dealing. The gravamen of Plaintiffs' claim is that Defendants did not offer loan modifications to which Plaintiffs were entitled and instructed Plaintiffs to stop making payments during the modification process. Plaintiffs allege that Defendants used nonpayment as an excuse to proceed to foreclosure. Those allegations fall short of establishing a breach of the duty of good faith and fair dealing. Defendants were under no duty to offer a loan modification or "to assist [Plaintiffs] in preventing foreclosure." Knowles, 2012 U.S. Dist. LEXIS, at *28 (citation omitted). An alleged breach of the duty of good faith and fair dealing must be based on the contracting parties' reasonable expectations and the rights established by their agreement. Barnes & Robinson Co., 195 S.W.3d at 642. The Note and the Deed of Trust explicitly require timely monthly mortgage payments, absent which Defendants can proceed with foreclosure. Plaintiffs have failed to state a claim for breach of an implied covenant of good faith and fair dealing. That claim is DISMISSED.

### E. Promissory Estoppel

Under the Tennessee law of promissory estoppel, "'[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third

person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Sparton Tech., Inc. v. Util-Link, LLC, 248 F. App'x 684, 689 (6th Cir. 2007) (quoting Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991)). Tennessee courts have limited promissory estoppel claims to situations in which: (1) the detriment suffered in reliance was substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance was foreseeable by the promisor; and (3) the promisee acted reasonably in justifiable reliance on the promise as made. Id.

Promissory estoppel is appropriately characterized as "an alternative theory to recovery on an express contract," which although not depending on the finding of an express contract between the parties, is dependent on the establishment of an enforceable contract. Id. at 689-90 (citations omitted). "Once an express contract is found . . . the alternative claim of promissory estoppel becomes moot." Id. at 690 (citation omitted).

Tennessee does "not liberally apply [promissory estoppel] and limits its application to 'exceptional cases.'" Sparton Tech., Inc., 248 F. App'x at 689 (quoting Barnes and Robinson Co., 195 S.W.3d at 645). An exceptional case is found only when a defendant's conduct is "akin to fraud." Id. (citation

omitted).    The action or promise that induced reliance or forbearance will be binding only "if injustice can be avoided [] by enforcement of the promise."    <u>Barnes and Robinson Co.</u>, 195 S.W.3d at 645 (citation omitted).

Plaintiffs base their promissory estoppel claim on Defendants' promise to "consider Plaintiffs' request for a loan modification" and to provide them with an answer to their request if they furnished certain documents.    (Compl. ¶ 74.) Insisting that Defendants' promise was unambiguous, Plaintiffs allege that they reasonably relied on the promise and invested time and energy in repeatedly providing documents.    (<u>Id.</u> ¶¶ 75-76.)    Defendants allegedly delayed answering Plaintiffs' request for a loan modification and ultimately provided no formal answer.    (<u>Id.</u> ¶ 77.)

Although Defendants argue that Plaintiffs' promissory estoppel claim is foreclosed by the mortgage contract, that argument misreads Plaintiffs' allegations.    Plaintiffs rely on an unfulfilled promise to consider their request for a loan modification, not the mortgage contract itself.    Defendants allegedly offered to consider modifying the loan agreement, thus creating a new contract, but never fulfilled their promise.    "In cases in which there is an absence of consideration between the parties so that there is no valid contract, detrimental reliance 'constitutes a substitute for consideration, or a sufficient

reason for enforcement of the promise without consideration.'" See Asbury v. Lagonia-Sherman, 2002 Tenn. App. LEXIS 731, at *15-16 (Tenn. Ct. App. Oct. 15, 2002) (quoting Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982)). Drawing all inferences in their favor, Plaintiffs allege that they relied in good faith on Defendants' promise to consider modifications and that Defendants' promise and Plaintiffs' reliance are a sufficient basis for estoppel. (Compl. ¶¶ 74-78.)

Plaintiffs have failed to plead any conduct akin to fraud. Establishing a promissory estoppel claim is like establishing fraudulent conduct that induced reasonable reliance. See Sparton Tech., Inc., 248 F. App'x at 689. To establish fraudulent conduct, a plaintiff must show: "(1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation['s] falsity--that the representation was made 'knowingly' or 'without belief in its truth,' or 'recklessly' without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise.'" Asbury, 2002 Tenn. App. LEXIS 731, at *16-17.

Plaintiffs do not allege that Defendants' misrepresentations were intentional, made knowingly or recklessly, or without an intention to perform. Plaintiffs allege that Defendants unambiguously promised to "consider" extending a loan modification if Plaintiffs provided "certain documents." (Compl. ¶¶ 74-75.) Non-performance of a representation to consider a loan modification does not speak to a party's intentional or reckless conduct. The inferences from Plaintiffs' allegations do not support fraudulent motives. Plaintiffs' promissory estoppel claim fails as a matter of law.

Although Plaintiffs' promissory estoppel claim is based on Defendants' promise to consider a loan modification, elsewhere Plaintiffs allege that they "were assured throughout the loan modification process that they would get a loan modification." (Compl. ¶ 35.) Plaintiffs have not identified who made the representations, when or where they were made, or that the promise was intentionally misrepresented or knowingly untruthful. Plaintiffs have not pled with particularity and their allegations are not "akin to fraud." Sparton Tech., Inc., 248 F. App'x at 689.

The parties dispute whether the Statute of Frauds bars promissory estoppel claims as a matter of law. See, e.g., Grona v. CitiMortgage, Inc., No. 3-12-0039 2012 U.S. Dist. LEXIS 45876, at *11 (M.D. Tenn. Apr. 2, 2012) ("[T]he Statute of

31

Frauds . . . require[s] that any modification to the Plan or to Plaintiff's Loan Documents must be in writing."); see also Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 823 F. Supp. 2d 786, 822-24 (W.D. Tenn. 2011) (certifying to the Tennessee Supreme Court the question of whether promissory estoppel can operate as an exception to the Statute of Frauds) (certification denied by the Tennessee Supreme Court on grounds that the question was overbroad and was rendered moot by the decision of the District Court). The Court need not decide the application of promissory estoppel in the context of the Statute of Frauds. Plaintiffs have not stated a cause of action upon which relief can be granted. Their promissory estoppel claim is DISMISSED.

### F. Intentional or Fraudulent Misrepresentation

Count IV of the Complaint contains Plaintiffs' intentional or fraudulent misrepresentation claims:

> [Bank of America] knew that the information representatives were giving to Plaintiffs and their representatives was inconsistent and inaccurate, such that Plaintiffs repeatedly received conflicting information regarding the loan modification process. Plaintiffs reasonably relied on these statements made by their servicer to their detriment, expending tremendous time, energy and emotional stress to furnish and refurnish [Bank of America] with requested documents.

> [Bank of America] intentionally and knowingly misrepresented to Plaintiffs and their representatives that they should not make regular mortgage payments during the loan modification process. It was

> reasonable for Plaintiffs to rely on these
> representations and they relied on these
> representations to their detriment. These statements
> were false because [Bank of America] ultimately relied
> on their failure to make payments to justify
> proceeding with foreclosure.

(Compl. ¶¶ 80-81.) Plaintiffs incorporate "all other paragraphs and claims," including Exhibits A-F, correspondence sent by Bank of America from May to September, 2012.

### 1. Intentional Misrepresentation

"Intentional misrepresentation is analyzed as a claim for fraud under Tennessee law." Power & Tel. Supply Co. v. SunTrust Banks, Inc., 447 F.3d 923, 931 (6th Cir. 2006). A claim for fraud must be "stated with particularity, and the plaintiff must, at a minimum, allege the time, place, and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." Id. (citing Fed. R. Civ. P. 9(b)); see also Coffey v. Foamex, L.P., 2 F.3d 157, 161-62 (6th Cir. 1993). The elements of a fraud claim are: "(1) an intentional misrepresentation of material fact; (2) the misrepresentation was made 'knowingly,' 'without belief in its truth,' or 'recklessly without regard to its truth or falsity'; (3) the plaintiff reasonably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact, or, 'if the claim is based on promissory fraud, then the

misrepresentation must 'embody a promise of future action without the present intention to carry out the promise'[.]" Power & Tel. Supply Co., 447 F.3d at 931.

Defendants argue that Plaintiffs have "not pled the elements of fraud or misrepresentation." (Def.'s Mem. 15.) Stated differently, Defendants argue that "Plaintiffs fail to plead the required elements of intentional or fraudulent misrepresentation with particularity." (Id.) Defendants contend that "inconsistent and inaccurate" information is not tantamount to fraud, that Plaintiffs fail to identify who made what misrepresentation, and that Plaintiffs' claim of reliance is not pled with particularity. (Id. 15-16.) Plaintiffs argue that their intentional misrepresentation claim is pled with particularity.

Accepting Plaintiffs' allegations as true, Plaintiffs have not stated a claim for intentional misrepresentation. Alleging that Defendants provided inconsistent and inaccurate information is not an allegation that they intentionally misrepresented that information. Claiming that information is inconsistent or inaccurate, without more, does not speak with sufficient particularity "and with a sufficient factual basis to support an inference" that the information was conveyed with intent to defraud. See Coffey, 2 F.3d at 162.

Plaintiffs submit correspondence they had with Bank of America representatives and allege that Plaintiffs relied on "conflicting information" to their detriment. (Compl. ¶¶ 47-61, 80-81.) The substance of those allegations is that Plaintiffs received "a very confusing series of correspondence," in which "representatives" of Bank of America: (1) intimated that mortgage help was possible, (id. ¶ 51-52); (2) notified Plaintiffs that the Property had been referred to foreclosure, (id. ¶¶ 57-58); and (3) notified Plaintiffs that a foreclosure sale had been scheduled for the Property, (id. ¶ 60). Plaintiffs allege the correspondence was confusing because Defendants "intentionally and knowingly misrepresented to Plaintiffs that they should not make regular mortgage payments during the loan process." (Id. ¶ 81.) Plaintiffs allege that Defendants' actions rise to the level of fraud because Bank of America "ultimately relied on [Plaintiffs'] failure to make payments to justify proceeding with foreclosure." (Id.)

Plaintiffs' allegations, accepting them as true and indulging every inference in their favor, fail to establish intentional misrepresentation. Confusing correspondence is not fraudulent; Plaintiffs offer no factual allegations that Defendants, particularly Bank of America, communicated with an intent to defraud or deceive. Plaintiffs do not allege who told them they should not make mortgage payments or when or where

those representations were made.  Fraud has not been pled with particularity.  That Defendants eventually relied on Plaintiffs' non-performance under the Note and the Deed of Trust does not establish that an original representation to consider a loan modification was made knowingly, without the belief in its truth, or recklessly, without regard to its truth or falsity. Power & Tel. Supply Co., 447 F.3d at 931.  Plaintiffs have not stated a claim of intentional misrepresentation.  That claim is DISMISSED.

## 2. Negligent Misrepresentation

Defendants argue that Plaintiffs have not stated a claim for negligent misrepresentation.  Negligent misrepresentation is not addressed anywhere in the Complaint.  The allegations in Count Four, indulging every inference in Plaintiffs' favor, cannot be construed as a claim for negligent misrepresentation.

Even attempting to construe a claim for negligent misrepresentation from the facts in the Complaint, the claim is not pled with particularity.  To state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the defendant supplied information to the plaintiff about a material fact; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiability relied on the information.  Capital TCP, LLC v. New Horizon Memphis, LLC,

2:07-CV-02157JPMDKV, 2010 U.S. Dist. LEXIS 68928, at *19 (W.D. Tenn. July 9, 2010); see also Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008).

Federal courts in Tennessee have concluded that claims "of negligent misrepresentation must be pled with the particularity required by the heightened pleading standard in Rule 9(b)." Asemota v. Suntrust Mortg., No. 11-2816-STA-dkv, 2012 U.S. Dist. LEXIS 83744, at *31 (W.D. Tenn. June 18, 2012); see also In re Nissan N. Am., Inc. Odometer Litig., 664 F. Supp. 2d 873, 881 (M.D. Tenn. 2009). As the Sixth Circuit has stated, however, "[w]hether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts." Republic Bank & Trust Co. v. Bear Stearns & Co., 683 F.3d 239, 247 (6th Cir. 2012) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

The Tennessee Court of Appeals has noted by way of dictum that negligent misrepresentation is subject to the "liberal pleading requirements" of Rule 8. See PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 549 (Tenn. Ct. App. 2012). The dictum in Bluff City Cmty. Dev. Corp is not controlling; the Court has not located additional Tennessee authorities applying Rule 8's standard to negligent misrepresentation.

37

At least two federal courts in Tennessee have applied Rule 9(b)'s heightened pleading standard. See Asemota, 2012 U.S. Dist. LEXIS 83744, at *31; In re Nissan N. Am., Inc. Odometer Litig., 664 F. Supp. at 881. Applying Rule 9(b)'s heightened pleading standard is consistent with Republic Bank & Trust Co., in which the Sixth Circuit applied Rule 9(b) to negligent misrepresentations under Kentucky law. See 683 F.3d at 247 (quoting Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (when claims "'sound in fraud and negligent misrepresentation, [Plaintiffs] must plead the misrepresentations with particularity under Fed. Rule Civ. Proc. 9(b).'"). Rule 9(b) applies to Plaintiffs' negligent misrepresentation claim.

Plaintiffs' allegations fail to establish that: (1) Defendants' statements were false; (2) Defendants did not exercise reasonable care in communicating that information; and (3) Plaintiffs' reliance was reasonable. Although the correspondence between Plaintiffs and Defendants contained inconsistent information, there is no factual allegation that the information was false or that Defendants failed to exercise reasonable care in communicating it. Given the terms in the Note and the Deed of Trust, stopping mortgage payments, under the circumstances alleged, was not reasonable. Plaintiffs have

failed to state a claim for negligent misrepresentation.  That claim is DISMISSED.

### G. TILA

Plaintiffs sue for damages under the TILA and Regulation Z, 12 C.F.R. § 226.39, alleging that by failing to notify Plaintiffs of "the change in ownership of their mortgage defendants have violated the provisions of Regulation Z of the federal Truth-In-Lending Act." (Compl. ¶ 83.)

Fifteen U.S.C. § 1641(g), the statutory parallel to Regulation Z, states that:

> In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer including – (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) how to reach an agent or party having authority to act on behalf of the new creditor; (D) the location of the place where transfer of ownership of the debt is recorded; and (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g).

Defendants do not argue that they complied with this statutory requirement.  They contend that Plaintiffs' claim "simply lacks the basic factual information to sufficiently state a claim under Rules 8(a) and 12(b)(6)."  (Defs.' Resp. 16.)

Defendants' argument is not well taken.  Fifteen U.S.C. §
1640(a) provides that:

> any creditor who fails to comply with any requirement under
> this chapter . . . including any requirement under . . .
> subsection (f) or (g) of section 131 [15 U.S.C. § 1641] . .
> . with respect to any person is liable to such person in an
> amount equal to the sum of - (1) any actual damage
> sustained by such person as a result of the failure;
> (2)(A)(i) in the case of an individual action twice the
> amount of any finance charge in connection with the
> transaction; . . . or (2)(A)(iv) in the case of an
> individual action relating to a credit transaction not
> under an open end credit plan that is secured by real
> property or a dwelling, not less than $400 or greater than
> $4,000.

15 U.S.C. § 1640(a).

"On its face, the statute provides that if a creditor
violates the § 1640(g) notice requirement as to a mortgage loan,
it is liable to the consumer in the amount equal to the sum of
the consumer's actual damages . . . and statutory damages of
double the finance charge, subject to lower and upper limits of
$400 and $4000."  Brown v. CitiMortgage, Inc., 817 F. Supp. 2d
1328, 1330-31 (S.D. Ala. 2011).  The "right of a TILA plaintiff
to recover statutory damages, irrespective of the presence or
absence of actual damages, is firmly entrenched in the case
law."  Id.; see also, e.g., Purtle v. Eldridge Auto Sales, 91
F.3d 797, 800 (6th Cir. 1996) ("The purpose of the statutory
recovery is to encourage lawsuits by individual consumers as a
means of enforcing creditor compliance with the Act. . . . A
plaintiff in a TILA case need not prove that he or she suffered

actual monetary damages in order to recover the statutory damages and attorney's fees." (internal citations omitted)). If Plaintiffs have alleged sufficient facts to show a violation of § 1640(g), they have stated a claim for which relief can be granted.

Defendants contend that Plaintiffs have failed to plead sufficient facts to meet the standard under Rule 12(b)(6) because they have not alleged when the alleged transfer took place, which defendant received the transfer and from whom, or what documents effected the "change of ownership." (Defs.' Resp. 16.) Plaintiffs contend that it would be impossible for them to provide exact dates and transfer information because the gravamen of their claim is that the Defendants did not provide the required information, which was in their exclusive possession. (Pls.' Resp. 20) ("If, when, and to whom a transfer of ownership of the loan documents that are the subject of this litigation occurred is information that is totally within the control of the Defendant.") Plaintiffs "will only be able to provide more particular information about an assignment or transfer of their loan if they are allowed to go forward with discovery." (Id.) Under nearly identical facts in Humphreys, the court found that the plaintiff had stated a facial claim under the TILA and that he was not required to plead specific information he did not have but that was likely to become

available during discovery. 2012 U.S. Dist. LEXIS 40954, at
*32; see also Rhynes v. Bank of Am., No. 12-2683, 2013 U.S.
Dist. LEXIS 42713, at 41-42 (W.D. Tenn. Mar. 26, 2013).

Plaintiffs have alleged that their mortgage changed owners
and that they were not notified of the change as required under
§ 1641. Accepting Plaintiffs' allegations as true and making
all reasonable inferences in their favor, they have alleged
sufficient facts to state a claim on which relief could be
granted under the TILA.

## H. Notice and Conduct of a Foreclosure Sale

Plaintiffs allege that ReconTrust Company has failed to
"clearly identify the creditor on whose behalf it is acting in
purporting to conduct the scheduled foreclosure sale as required
by state law." (Compl. ¶ 84.) Plaintiffs allege that
ReconTrust, which is not a Tennessee corporation, neither
identified the place of the foreclosure sale nor complied with
the Tennessee statute that controls foreclosure sales by non-
resident entities. (Id. ¶¶ 85-86.) Plaintiffs also allege that
ReconTrust fails to comply with Tennessee law because it is not
a secured creditor, but "a wholly owned subsidiary of the entity
allegedly holding the beneficial interest of the Deed of Trust
or the servicer of that entity and is an improper trustee or
substitute trustee to conduct such a sale." (Id. ¶ 86.)

Plaintiffs argue that ReconTrust, which is headquartered in California, is not a proper Substitute Trustee. (Pls.' Resp. 21.) They argue that, because ReconTrust has no presence in Tennessee, it "lacks sufficient independence" from its parent, Bank of America. (Id.)

Defendants argue that Plaintiffs raise a wrongful foreclosure claim against ReconTrust only. Defendants argue that Tennessee law does not support Plaintiffs' wrongful foreclosure claim because Plaintiffs were properly notified of the foreclosure sale. Defendants also argue that U.S. Bank, because of its "beneficial interest under the [Deed of Trust] pursuant to assignment," has the authority to foreclose. (Defs.' Mem. 17.)

As a threshold matter, Defendants contend that Plaintiffs should be foreclosed from raising their Substitute Trustee argument because no allegations appear in the Complaint. Because Plaintiffs "are attempting to use their Response as a way to amend their Complaint," Defendants contend that the arguments in the Response must be disregarded. (Defs.' Rep. 10.) The Complaint explicitly raises the Substitute Trustee issue. In Paragraph 86, Plaintiffs allege that "ReconTrust is a wholly owned subsidiary of the entity allegedly holding the beneficial interest in the Deed of Trust or the servicer of that entity and is an improper trustee or substitute trustee to

conduct such a sale." (Compl. ¶ 86.) Defendants' argument is not well taken.

Courts in this circuit have concluded that substitute trustees (or loan servicers) can be authorized to pursue foreclosure proceedings as agents for secured creditors. See In re Smoak, No. 09-30421, 2011 Bankr. LEXIS 3621, at *14 (Bankr. S.D. Ohio 2011) ("Ocwen can enforce the note because it acts as the agent for the Bank of New York Mellon."); see also FDIC v. Graham, 2011 U.S. Dist. LEXIS 40667, at *11-16 (S.D. Ohio Apr. 13, 2011) ("[U]nder the terms of the Agreement, the Servicer is the party authorized and required to pursue foreclosure activities and, therefore, is the real party in interest in this case as contemplated by Rule 17") (internal quotation marks omitted).

The Deed of Trust, executed by Plaintiffs, contains a provision for appointing a Substitute Trustee. (Deed of Trust 13.) That provision, under the heading "Substitute Trustee," states that:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor shall succeed to all the title, power, and duties conferred upon Trustee herein and by Applicable law." (Id.)

44

ReconTrust was appointed Substitute Trustee by instrument filed in the Register's Office of Shelby County, Tennessee. (Ex. F, ECF No. 1-2.) Because the Deed of Trust explicitly provides for a Substitute Trustee and ReconTrust was appointed Substitute Trustee by an instrument recorded in Shelby County, Tennessee, Plaintiffs' argument is not well taken.

Insofar as Plaintiffs argue that ReconTrust, as a non-resident entity, has failed to comply with Tennessee law, their argument is misplaced. Under Tennessee law, if a non-resident trustee or agent is "involved in foreclosure proceedings relative to residential real property that is located in Tennessee and owned by a Tennessee resident, . . . [a]ll discovery proceedings, including, but not limited to, the production of requested documents and the deposition of witnesses, shall be conducted in the county in which the residential real estate is located or in which the litigation is pending." Tenn. Code Ann. § 35-5-115.

On its face, § 35-5-115 requires non-resident trustees to conduct all discovery proceedings in the county in which the residential property is located or in which the litigation is pending. Plaintiffs' allegation that ReconTrust "has not complied with the requirements" of § 35-5-115 is a bare assertion devoid of any factual support. There is no allegation that ReconTrust failed to conduct discovery proceedings in

Shelby County, Tennessee, or that such proceedings were appropriate or required. Precedent in this district supports dismissing a complaint that "contains no factual support for Plaintiff's conclusory allegation." Malone v. U.S. Bank Nat. Ass'n, 12-3019-STA, 2013 WL 392487, at *4 (W.D. Tenn. Jan. 30, 2013).

Plaintiffs allege that ReconTrust failed to identify the place of the foreclosure sale and the identity of the creditor. Tennessee law requires that a notice of foreclosure provide the names of the parties interested and state the time and place of sale. Tenn. Code Ann. § 35-5-104(a)(1), (3). The Notice satisfies those requirements. The parties interested are named. ReconTrust is identified as "having been appointed [] Substitute Trustee by instrument filed for record in the Register's Office of Shelby County, Tennessee." (Ex. F.) The time and place of sale are stated as "December 5, 2012, 10:00 AM at [] Shelby County, where [] foreclosure sales are customarily held at the Comfort Inn Downtown, 100 N. Front Street, Memphis, TN 38103." (Id.) Plaintiffs' allegations fail as a matter of law.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The Motion to Dismiss Plaintiffs' claims for violation of the TCPA, intentional or negligent misrepresentation, promissory estoppel, breach of the

covenant of good faith and fair dealing, and violation of Tennessee's foreclosure law is GRANTED. The Motion to Dismiss Plaintiffs' claim for violation of the TILA is DENIED.

So ordered this 2d day of July, 2013.

s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE